UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RED SHIELD ADMINISTRATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> MIKE KREIDLER, <br><br> Defendant. | Case No. C21-5551-RSM <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff Red Shield Administration, Inc. ("Red Auto")'s Motion for Temporary Restraining Order. Dkt. #2. Red Shield seeks to enjoin Defendant Mike Kreidler, the Washington State Insurance Commissioner ("Commissioner"), from entry of a Consent Order that will become final and public on Thursday, August 5, 2021. Having reviewed Red Auto's complaint, motion, the declaration and exhibits attached thereto, and the relevant law, the Court GRANTS Red Auto's motion for an ex parte temporary restraining order.

//

//

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY
RESTRAINING ORDER - 1

## II.  BACKGROUND

Red Auto is an auto service contract provider incorporated under the laws of Kansas with a principal place of business in Phoenix, Arizona. Dkt. #3 at ¶ 3. Red Auto is licensed to sell auto service contracts in all states except for Washington, California, and Florida. *Id.* at ¶ 4. Red Auto does not sell service contracts, solicit or advertise its business in Washington, nor does it have a place of business, property or employees in Washington. *Id.* at ¶¶ 5-6.

On March 9, 2019, a resident of Washington ("Purchaser") purchased a used automobile from an automobile dealership in Portland, Oregon, along with a RED Shield Guard Service Contract ("Red Shield Contract") from Red Auto. *Id.* The sale occurred in Portland and identified Red Auto as the administrator and obligor of the Red Shield Contract. *Id.* at 5. On or around June 8, 2020, Red Auto denied a claim for vehicle repair made by the Purchaser under the Red Shield Contract. *Id.* at ¶ 7. The Purchaser did not appeal or otherwise contest denial of her claim, but instead filed a complaint with the Washington Office of the Insurance Commissioner ("OIC") alleging that Red Auto issued a service contract to a Washington resident without being registered as a service contract provider in the state of Washington. *Id.*

The OIC conducted an investigation and sent a letter to Red Auto dated May 7, 2021, with an attached Consent Order No. 21-0267. *Id.* at 23-24. The Consent Order asserted violations of RCW Title 48 based on the fact that Red Auto was not registered as an auto service contract provider in Washington. *Id.* On June 25, 2021, the OIC issued a revised version of Order No. 21-0267 ("the Consent Order"), *id.* at 25-29, which again asserted that Red Auto violated several provisions of RCW Title 48 by entering into the Red Shield Contract with a Washington resident without a valid registration as a service contract provider. *Id.* at 32.

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER - 2

Pursuant to RCW 48.15.023(5)(a), the Commissioner assessed a $2,000.00 fine against Red Auto and required that Red Auto consent to the laws of Washington and waive all procedural rights or judicial challenges to the Consent Order. *See* Dkt. #3 at 34 ("The Company consents to the entry of this Order, waives any and all hearing or other procedural rights, and further administrative or judicial challenges to this Order."). The OIC further informed Red Auto that if it refused to agree to the Consent Order, the Commissioner could request a hearing and seek sanctions "in the full amount warranted for your particular situation." *Id.*; *see also* RCW 48.15.023(5)(ii). The Consent Order and RCW 48.15.023 provide that the Commissioner may assess a civil penalty of "not more than twenty-five thousand dollars for each violation" against Red Auto. *Id.*

Red Auto disputes that it is subject to RCW Title 48 such that the Commissioner may levy fines or take disciplinary action against it. Dkt. #2 at 5. However, Red Auto argues that without injunctive relief from this Court, it will be forced to either consent to the Commissioner's jurisdiction, thereby facing potential disciplinary action in other jurisdictions, or refuse to consent and risk a substantial civil penalty. Red Auto claims that it faces significant risk of harm as a result of potential disciplinary action in other jurisdictions, including New York and Nevada, where Red Auto is required to report any violations of applicable insurance codes to the state insurance authority. For this reason, Red Auto seeks a temporary restraining order enjoining the Commissioner from issuing the Consent Order, imposing a fine, or otherwise enforcing RCW Title 48 until the jurisdictional issue is resolved.

Given that Defendant's Consent Order will become final on August 5, 2021, Plaintiff requests that this motion be noted for August 4, 2021. Dkt. #2. Red Shield's motion does not expressly request ex parte relief but provides no evidence of service. Given that its requested

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY
RESTRAINING ORDER - 3

time frame for consideration is shorter than the 48-hour deadline for a response set forth under LCR 65(b), the Court construes Red Shield's motion as a request for ex parte relief pursuant to Fed. R. Civ. P. 65(b).

### III.    DISCUSSION

**A. Legal Standard**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY
RESTRAINING ORDER - 4

With respect to Plaintiff's request for ex parte relief, "[t]he Court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). The Court's Local Rules otherwise allow for the adverse party or parties to file a Response to a TRO. *See* LCR 65(b)(5). The adverse party must file a notice "indicating whether it plans to oppose the motion within twenty-four hours after service of the motion," and "file its response, if any, within forty-eight hours after the motion is served." *Id.* No reply is permitted from Plaintiff. *Id.* "Unless the requirements of Fed. R. Civ. P. 65(b) for issuance without notice are satisfied, the moving party must serve all motion papers on the opposing party before or contemporaneously with the filing of the motion and include a certificate of service with the motion." LCR 65(b)(1).

**B. Plaintiff's Motion to Enjoin Entry of August 5th Consent Order**

The Court has reviewed Red Auto's Motion and finds that it satisfies the standard for temporary injunctive relief, and furthermore has demonstrated that immediate and irreparable injury will result before Defendant can be heard in opposition.

    i.    Likelihood of Success or Serious Questions going to the Merits

The issue before the Court is whether the Due Process Clause of the Fourteenth Amendment renders the Commissioner's enforcement of Washington insurance laws against Red Auto unconstitutional. While the complexity of the constitutional question makes it difficult to gauge Red Auto's likelihood of success on the merits, the Court finds that Red Auto

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY
RESTRAINING ORDER - 5

has raised serious questions going to the merits such that temporary injunctive relief is appropriate. *Cottrell*, 632 F.3d at 1134–35.

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV. In the context of taxation, courts have determined that a state's power to enforce its laws against non-resident corporations is limited to those entities with "certain minimum contacts" such that the tax "does not offend 'traditional notions of fair play and substantial justice.'" *N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S. Ct. 2213, 2220 (2019) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Red Auto does not cite specific authority for its proposition that case law addressing a state's power to tax out-of-state entities applies in equal force to its power to enforce insurance laws against out-of-state actors—particularly where a state resident has alleged injury. However, the Court finds sufficient support in the case law to raise a serious question of law on the scope of the Commissioner's enforcement power over out-of-state businesses.

The Supreme Court has provided that "[u]ltimately, only those who derive 'benefits and protection' from associating with a State should have obligations to the State in question." *Id.* at 2220 (quoting *Int'l Shoe*, 326 U.S. at 319). Here, given that Red Auto has no physical presence in Washington and does not solicit or advertise its services in the state, minimal contacts under *Int'l Shoe* are not satisfied such that enforcement of Washington insurance laws against Red Auto would offend "traditional notions of fair play and substantial justice." The fact that Red Auto is registered with the Washington Secretary of State to conduct business in Washington may not alter this analysis given Washington state law holding that registration does not amount to a corporation's purposeful availment of the benefits and protections of

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY
RESTRAINING ORDER - 6

Washington law. *See, e.g.*, *Washington Equip. Mfg. Co. v. Concrete Placing Co.*, 85 Wn. App. 240, 245–48, 931 P.2d 170, 173 (1997).

Another question is whether Red Auto's sale of a service contract in Oregon to purchasers residing in Washington subjects it to the Commissioner's enforcement authority and Washington insurance laws. Red Auto concedes that in the course of the OIC's investigation, Red Auto identified one other auto services contract—also entered into in Portland, Oregon—where the purchaser listed a home address in Washington.[1] Dkt. #3 at ¶ 8. However, Red Auto raises a serious question as to whether these two sales subject it to the Commissioner's enforcement authority in light of Supreme Court law stating that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." 357 U.S. 235, 253 (1958). Nor do "random, fortuitous, or attenuated contacts, or . . . the unilateral activity of a third person" suffice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citation omitted). Red Auto's contract sales in Oregon to two purchasers with Washington addresses may be reasonably construed as "random" or "attenuated."

The Court acknowledges that resolving the constitutional question of whether the Commissioner's enforcement action against Red Auto violates due process implicates a complex area of law. For that reason, while the Court cannot conclude at this point whether Red Auto has demonstrated a likelihood of success on the merits, the Court finds that Red Auto's arguments and the case law cited in support thereof raise a serious question of law warranting temporary injunctive relief under *Cottrell*.

//

---

[1] Red Auto does not dispute that the Purchaser who filed a complaint with the OIC is a Washington resident, but states that it lacks sufficient information to determine the residence of this other purchaser, Mr. Clarno, who listed an address in Vancouver, Washington at the time of contracting.

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER - 7

ii.     Irreparable Harm

The Court also finds that Red Auto will suffer irreparable harm absent injunctive relief before the Commissioner has an opportunity to be heard.  Because the Consent Order will become final on August 5, 2021, Red Auto is faced with either demanding a hearing before a Washington administrative hearings officer, thereby waiving its right to challenge the Commissioner's jurisdiction, or allow the Consent Order and $2,000 fine to become a final order and public record.  In the latter scenario, Red Auto will be obligated to report its violation to insurance regulators in states where it continues to serve as an auto service contract provider, thereby risking disciplinary action from other state insurance authorities.  Red Auto specifically identifies New York and Nevada as two states where it is required to report any violations and where it may be subject to disciplinary action for out-of-state violations.  Dkt. #3 at ¶ 13.  Should this Court ultimately conclude that the Consent Order is unconstitutional, without a TRO in place, Red Auto will be required to report the violation until the Court renders a final decision.  In addition to reputational damage, reporting may result in disciplinary action by those state insurance authorities.  *Id.*

Considering these imminent harms, regardless of whether Red Auto chooses to waive its right to challenge jurisdiction or allow the Consent Order to become final, the Court concludes that Red Auto has demonstrated a likelihood of irreparable harm absent injunctive relief.  Furthermore, because the Consent Order will become final on August 5, 2021, this injury will occur before the Commissioner has an opportunity to be heard.

iii.    Balance of the Equities

The balance of the equities tips heavily in favor of Red Auto.  If this Court enters the TRO and the Commissioner ultimately prevails on the merits, the Commissioner will still be

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER - 8

able proceed with enforcement of the Consent Decree through the administrative process set forth under RCW Title 48. However, if the TRO is denied and Red Auto ultimately prevails on the merits, it faces disciplinary action in other states for the pendency of this action so long as the Consent Order remains in place. The temporary delay in enforcement suffered by the Commissioner is outweighed by the harm faced by Red Auto. The balance of equities therefore tips strongly in favor of Red Auto.

        iv.        Public Interest

While Red Auto argues that there is public interest in guarding against overreach by state agencies against non-resident corporations, the Court acknowledges that there is a countervailing public interest in timely enforcement of this state's insurance laws to prevent future harm and to punish violators. However, the risk of a Washington resident purchasing Red Auto's auto service contract in another state is mitigated by the fact that Red Auto entered into runoff in 2019, meaning that it is no longer selling auto service contracts in any state. Dkt. #3 at ¶ 12. For that reason, the Court finds that the public interest weighs in favor of Red Auto.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff Red Auto's Motion for an ex parte temporary restraining order, Dkt. #2. The Court ORDERS as follows:

(1) Defendant is hereby prohibited from (i) entering the Consent Order, or any similar order, against Plaintiff, (ii) from levying a fine or taking other disciplinary action against Plaintiff for the alleged violations of RCW Title 48 enumerated in the Consent Order, and (iii) from otherwise enforcing RCW Title 48 against Plaintiff for the alleged violations of RCW Title 48 enumerated in the Consent Order. FURTHERMORE, the statutory deadline for

Plaintiff to demand a hearing before a Washington administrative hearings officer relating to the Consent Order under RCW § 48.04.010(1)(b) is HEREBY STAYED;

(2) This Order shall expire on **August 18, 2021**, unless it is extended by the Court for good cause or by consent of the parties, or is dissolved upon motion by Defendant. *See* Fed. R. Civ. P. 65(b). No later than **August 11, 2021**, Defendant must show cause why this Order should not be converted to a preliminary injunction. Plaintiff may file a response no later than **August 13, 2021**.

(3) Upon request by Defendant, the Court may require Plaintiff to provide reasonable security in the event a preliminary injunction is issued, as required by Fed. R. Civ. P. 65(c);

(4) Plaintiff shall promptly serve Defendant with a copy of this Order.

DATED this 4th day of August, 2021.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER - 10