UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RED SHIELD ADMINISTRATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> MIKE KREIDLER, <br><br> Defendant. | Case No. C21-5551-RSM <br><br> ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION |

## I.     INTRODUCTION

This matter comes before the Court following the Court's Order Granting Motion for Temporary Restraining Order. Dkt. #10. On August 4, 2021, this Court granted Plaintiff Red Shield Administration, Inc. ("Red Auto")'s Motion for Ex Parte Temporary Restraining Order seeking relief from the Commissioner's entry of a Consent Order that would have become final and public on August 5, 2021. Dkt. #10. The Court directed Defendant to show cause why the order should not be converted to a preliminary injunction. Having reviewed Defendant's brief and Plaintiff's response, the Court ORDERS that Plaintiff's temporary restraining order shall not be converted to a preliminary injunction upon its expiration on August 18, 2021.

//

## II.     BACKGROUND

A full background of this case is not necessary given this Court's previous order in this matter. *See* Dkt. #10.  Red Auto is an auto service contract provider incorporated under the laws of Kansas.  Dkt. #3 at ¶ 3.  Red Auto is licensed to sell auto service contracts in all states except for Washington, California, and Florida, but does not solicit or advertise its business in Washington, or have a place of business, property or employees in Washington. *Id.* at ¶¶ 4-6.

On March 9, 2019, a resident of Washington ("Purchaser") purchased a used automobile from an automobile dealership in Portland, Oregon, along with a RED Shield Guard Service Contract ("Red Shield Contract") from Red Auto. *Id.*  Red Auto later denied a claim for vehicle repair made by the Purchaser under the Red Shield Contract. *Id.* at ¶ 7.  The Purchaser filed a complaint with the Washington Office of the Insurance Commissioner ("OIC") alleging that Red Auto issued a service contract to a Washington resident without being registered as a service contract provider in the state of Washington. *Id.*

On June 25, 2021, the OIC issued a revised Consent Order to Red Auto asserting violations of RCW Title 48, based on the fact that Red Auto entered into an insurance contract with a Washington resident despite not having a valid registration as a service contract provider. *Id.*  Pursuant to RCW 48.15.023(5)(a), the Commissioner assessed a $2,000.00 fine against Red Auto and required that Red Auto consent to the laws of Washington and waive all procedural rights or judicial challenges to the Consent Order. *See* Dkt. #3 at 34 ("The Company consents to the entry of this Order, waives any and all hearing or other procedural rights, and further administrative or judicial challenges to this Order.").  The OIC further informed Red Auto that if it refused to agree to the Consent Order, the Commissioner could request a hearing and seek sanctions "in the full amount warranted for your particular

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 2

situation." *Id.*; *see also* RCW 48.15.023(5)(ii). The Consent Order and RCW 48.15.023 provide that the Commissioner may assess a civil penalty of "not more than twenty-five thousand dollars for each violation" against Red Auto. *Id.*

On August 3, 2021, Red Auto sought emergency relief from this Court on the basis that it is not subject to RCW Title 48 such that the Commissioner may levy fines or take disciplinary action against it. Dkt. #2 at 5. The Court determined that "while [it] cannot conclude at this point whether Red Auto has demonstrated a likelihood of success on the merits, the Court finds that Red Auto's arguments and the case law cited in support thereof raise a serious question of law warranting temporary injunctive relief under *Cottrell*." Dkt. #10 at 5-6 (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)). The Court further concluded that Red Auto had demonstrated a likelihood of irreparable harm, that the balance of equities tipped in Red Auto's favor, and that an injunction was in the public interest. *Id.*

On August 4, 2021, the Court entered a temporary restraining order barring Defendants from entering the Consent Order, levying a fine or taking other disciplinary action, or otherwise enforcing RCW Title 48 against Plaintiff until August 18, 2021. *Id.* at 9. The Court also stayed the deadline for Plaintiff to demand a hearing before a Washington administrative hearings officer. *Id.* at 10. Parties have submitted briefing on whether the temporary restraining order should be converted to a preliminary injunction, which the Court will consider herein.

### III. DISCUSSION

**A. Legal Standard**

Granting a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res.*

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO
PRELIMINARY INJUNCTION - 3

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20, 129 S.Ct. 365).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). However, the "serious questions" approach supports a preliminary injunction only so long as the moving party also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

**B. Service of Summons and Complaint**

As an initial matter, parties dispute whether Red Auto has properly served the Commissioner pursuant to Fed. R. Civ. P. 4(e), which provides that state law governing service must be followed to effectuate service of process. While the Commissioner argues that Red Auto has yet to properly serve the Attorney General's Office with the complaint, motion, or TRO, as required under RCW § 4.92.020, Red Auto contends that all Assistant Attorney Generals are working remotely such that it is unaware "how it is suppose[] to accomplish service in accordance with the statute under these circumstances." Dkt. #13 at 9. An email dated August 13, 2021, indicates that counsel for Red Auto alerted the Attorney General's

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 4

Office of this issue, to which the Attorney General's Office responded that it would "look into it and respond, likely early next week." Dkt. #15 at 7.

The Court is not persuaded that as of the date of this Order, the state of Washington has been properly served pursuant to Fed. R. Civ. P. 4(e). However, given that Red Auto has failed to meet the substantive requirements for a preliminary injunction, the Court need not resolve the service issue at this time.

**C. Likelihood of Success on the Merits**

With the benefit of the Commissioner's briefing and Red Auto's response, the Court concludes that Red Auto cannot demonstrate a likelihood of success on the merits, nor has it demonstrated "serious questions" going to the merits under the alternative *Cottrell* standard.

The facts of this case are not in dispute. Red Auto is an out-of-state company that neither solicits business from nor resides in Washington state, but has issued at least one insurance contract to a Washington resident. Red Auto contends that in light of its negligible contacts with Washington state, the Due Process Clause of the Fourteenth Amendment renders the Commissioner's enforcement of Washington insurance laws against Red Auto unconstitutional. The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV.

As an initial matter, parties dispute the proper standard to apply for determining whether the Commissioner's enforcement of the Washington Insurance Code violates Red Auto's due process rights. The Commissioner sets forth the standard for assessing whether a court may exercise specific personal jurisdiction over an out-of-state defendant. *See* Dkt. #12 at 6 (citing *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir. 1986)). Red Auto, in turn, sets forth the standard for determining whether a state may lawfully

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 5

tax an out-of-state corporation.  Dkt. #2 at 8 (quoting *N. Carolina Dep't of Revenue v. The Kimberley Rice Kaestner 1992 Fam. Tr.*, 139 S. Ct. 2213, 2219 (2019)).

As Red Auto acknowledges, the two tests are "similar," but the Court finds that neither one is directly on-point.  The Commissioner's specific jurisdiction analysis misses the mark, given that the issue before the Court is whether a Washington regulatory agency may lawfully enforce Washington insurance laws against Red Auto—not whether a Washington court has personal jurisdiction over it.  Nor is the Court persuaded that Red Auto's taxation analysis, which considers whether a state may lawfully tax an out-of-state corporation, sets forth the proper standard.  Courts have found that the tests for regulation and taxation of out-of-state insurers are not interchangeable, given that a state's "special interest in the business of insurance . . . justifies regulation of an insurer which has lesser contacts with the regulating state than other types of businesses." *Illinois Com. Men's Assn. v. State Bd. of Equalization*, 671 P.2d 349, 352 (1983) ("[W]e cannot accept the correctness of the board's claim that the power to regulate a foreign insurer is always determinative of the power to tax it.").

The Supreme Court addressed the scope of a state's power to regulate foreign insurers in *State Board of Insurance v. Todd Shipyards Corp.*, 370 U.S. 451 (1962).  *Todd Shipyards* held that state regulation must be examined in light of due process criteria existing prior to the enactment of the McCarran Act, 15 U.S.C. § 1011-1015,[1] and "should be kept within the limits set by" the Court's previous decisions in *Allgeyer v. State of Louisiana*, 165 U.S. 578 (1897); *St. Louis Cotton Compress Co. v. State of Arkansas*, 260 U.S. 346 (1922); and *Connecticut General Life Ins. Co. v. Johnson*, 303 U.S. 77 (1938).  In analyzing the due process question,

---

[1] The McCarran Act provided that regulation and taxation of the insurance business would be subject to the laws of the several states and that silence on part of Congress must not be construed as imposing any barrier to state regulation or taxation within the limits of the constitution.  *See Prudential Insurance Co. v. Benjamin*, 328 U.S. 408 (1946) (sustaining validity of McCarran Act).

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 6

the *Allgeyer* line of cases emphasized the location of the contract sought to be taxed or regulated and concluded that where the insurer's sole contact was the location of risk, the state lacked jurisdiction. In addition to preserving the *Allgeyer* line of cases, *Todd Shipyards* also declined to overrule its previous decisions in *Osborn v. Ozlin*, 310 U.S. 53 (1940) and *Hoopeston Canning Co v. Cullen*, 318 U.S. 313 (1943). *Osborn* and *Hoopeston* considered the contacts with the regulating state that arose from the transactions involved and the interest of the state in regulating such transactions. *See Hoopeston*, 318 U.S. at 316–317 (finding that a state's "substantial interest[] in the business of insurance of its people or property . . . may be measured by highly realistic considerations such as the protection of the citizen insured or the protection of the state from the incidents of loss . . . .").

Since *Todd Shipyards*, courts have implemented a "two-pronged approach in meeting the criteria of due process" that applies the *Osborn-Hoopeston* approach and the *Allgeyer* approach "with varying degrees of intensity." *Ohio Indem. Co. v. Ins. Div. Maryland Dep't of Licensing & Regul.*, No. 79, 1975 WL 1014, at *6 (Md. Tax June 2, 1975). In *Ministers Life and Casualty Union v. Haase*, the Wisconsin Supreme Court found that an insurer that solicited business through advertisement in national publications and by direct mail, that was not licensed to do business in Wisconsin and had no office, officer, bank account or real estate within the state, was nevertheless subject to regulation based on the state of Wisconsin's "substantial interest" in the transactions. *See* 141 N.W. 2nd 287, 295 (1966) (concluding that insurer "realistically entered the state looking for and obtaining business" through systematic solicitation of insurance by mail and utilizing services of investigatory agencies and doctors in the state for underwriting and claim-settlement).

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 7

A year later, in *People v. United Nat. Life Ins. Co.*, the California Supreme Court found that the state could lawfully regulate an insurance company with no agents in California that only had contact with policyholders by mail, reasoning that the insurer had "sufficient contacts with the regulating state so as to give the latter a substantial interest in the transactions." 427 P.2d 199, 207 (1967). The *People* court noted that the insureds were residents of California, the solicitation of insurance took place in California through advertising material, and payment of premiums was made by California residents from funds or bank accounts located in California. *Id.* Furthermore, it observed that it was "foreseeable that should defendants for any reason fail to perform their obligations in accordance with the policies, *California might be called upon to provide assistance for the persons within its borders who were intended to be financially assisted by the benefits* under the policies." *Id.* at 209 (emphasis added). For these reasons, the court concluded that "the substantial interest of California in these transactions is obvious." *Id.*

The following year, the New Jersey Supreme Court held that premiums paid to an insurer not authorized to do business in New Jersey by the insured, a New Jersey corporation, were subject to a tax even though the insurance was purchased through a New York broker and paid by checks drawn on New York banks. *Howell v. Rosecliff Realty Co.*, 245 A.2d 318 (1968). In concluding that the out-of-state insurer was subject to New Jersey insurance regulations, the *Howell* court observed that "[i]nsurance is so essential a part of the area of a State's primary responsibility that the State's power *should not depend upon where the parties choose to contract for the insurance or to pay the loss*. The State's interest and its responsibility to its citizens should be enough to support regulation and taxation of policies relating to the risks within its jurisdiction." *Id.* at 324 (emphasis added). The court further

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 8

observed that "the foreign carrier, no less than the admitted company, is aided by the measures the State takes to limit the incidence of the losses covered by insurance. Hence there should be no need to find additional contacts or activities within a State to enable the State to act." *Id.*

Years later, in *Nat'l Liberty Life Ins. Co. v. State*, the Wisconsin Supreme Court moved beyond the bounds established in *Allgeyer*. *See* 215 N.W. 2d 26 (1974). In that case, the court upheld a state gross premiums tax on an unlicensed foreign "mail order" insurance company, reasoning that "[t]he simple but controlling question is whether the State has given anything for which it can ask in return." *Id.* at 34. The court concluded that because Wisconsin's laws governing public health, safety and welfare "tend[] to lessen the danger of accidents, threats to life, and unhealthy conditions" that "redound[] to the benefit of companies engaged in either the life insurance or accident and health insurance business[,]" the foreign insurer enjoyed the benefits paid for out of general revenues for which "it would be fair [for the State] to expect a contribution." *Id.* at 34. The court also noted that the figure of $1,432,479 in total gross premiums "indicate[d] a substantial business and establishes a sufficient contact with this state to justify the imposition of a tax on the [insurer's] business in Wisconsin . . . ." *Id.* at 35.

In analyzing these four post-*Todd Shipyards* cases, the court in *Ohio Indem. Co.* concluded that "[w]hile the Supreme Court has not made a clear and concise statement of its policy concerning the application of due process by the states to unlicensed out of state insurance companies earning premiums therein, *there is a definite shift by the Court towards a relaxation of the 'contact' approach*." 1975 WL 1014, at *9 (emphasis added). In the absence of any "clear and concise" statement from the Supreme Court, the *Ohio Indem. Co.* court felt "compelled to use the same two pronged approach" used in *Ministers Life*, *Peoples* and *Howell*, as well as "the extension of traditional due process" set forth in *National Liberty*. *Id.* Applying

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 9

this line of cases, the court concluded that an Ohio-based insurer that engaged in no direct solicitation in Maryland, but nevertheless entered into and performed contracts with Maryland banks, had sufficient contacts to allow Maryland to impose gross premiums tax with penalties on the insurer's contracts consistent with due process. The court reasoned that the *Allgeyer* trilogy of cases was satisfied based on the "regular and continuing relationships" between the insurer and its insureds, wherein the insureds would send monthly reports and, whenever a loss occured, send claim forms to the insurer. *Id.* Furthermore, consistent with the *Osborn-Hoopeston* approach, it concluded that the state of Maryland's substantial interest in "protecting its citizens by regulation of the insurance industry doing business within this state" was fulfilled through "regulation and taxation of policies relating to the risks within its jurisdiction." *Id.* at *10 (quoting *Howell*, 245 A.2nd at 324) (internal quotations omitted).

Applying these holdings to the facts of this case, the Court cannot conclude that Red Auto has a likelihood of success on the merits of its argument that the Commissioner's regulation of Red Auto violates due process. It is undisputed that Red Auto knowingly entered into a contract with a Washington resident, as indicated by the Purchaser listing her Washington address on the contract, *see* Dkt. #3 at 5, and that the Commissioner's challenged enforcement action arose out of this sale due to Red Auto's failure to have registered as a service contract provider. Red Auto vehemently argues that because it engaged in no direct solicitation in Washington, has no agents or offices within the state, and did not execute the contract within Washington, it is shielded from the Commissioner's regulatory authority. *See* Dkt. #13 at 5-6. Yet this position fails to acknowledge the "definite shift by the Court towards a relaxation of the 'contact' approach" to regulation of out-of-state insurers." *Ohio Indem. Co.*, 1975 WL 1014, at *9. The *Howell* court recognized that a state's regulatory power "should not

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 10

depend upon where the parties choose to contract for the insurance or pay the loss," and that a state's responsibility to its citizens was "enough" to support regulation of policies covering risks within its jurisdiction. *Howell*, 245 A.2nd at 324. Likewise, *Ohio Indem. Co.* found sufficient contact notwithstanding the fact that the foreign insurer had no physical location or personnel within the state nor solicited business in the state. *See* 1975 WL 1014, at *10.

Here, by selling Purchaser a Red Shield Contract, Red Auto entered into a continuing relationship with a Washington resident. In addition to receiving Purchaser's claim from Washington, it enjoyed the benefits of Washington's public safety laws that lessened the danger of accidents. *Nat'l Liberty*, 215 N.W. 2d at 34. Moreover, Red Auto cannot reasonably argue that the state of Washington has no substantial interest in this transaction. It was foreseeable that should Red Auto fail to perform its obligations, the Purchaser would likely call upon the state of Washington "to provide assistance" to her. *People*, 427 P.2d at 207. This is precisely what happened here: upon having her claim denied by an unlicensed provider, the Purchaser sought relief from the OIC by filing a complaint. Dkt. #3 at ¶ 7. In effect, Red Auto's position is that by not registering as a Washington provider, it may nevertheless reap the benefits of selling contracts to Washington residents without having to comply with Washington insurance laws. This jurisdictional dodge renders futile the very purpose of RCW § 48.110.030(1), which serves to protect Washington residents from unregistered providers. Red Auto's position does not comport with the *Osborn-Hoopeston* line of cases, which requires "highly realistic considerations" of the state's interest in the transaction—here, the protection of the insured citizen.

For these reasons, the Court finds that Red Auto has failed to demonstrate a likelihood of success on the merits of its claim that the Commissioner's enforcement of Washington

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 11

insurance laws violates due process. Nor has it raised serious questions of law warranting relief under *Cottrell*.

### D. Irreparable Harm

While failure to demonstrate a likelihood of success on the merits is sufficient to deny Red Auto's request for a preliminary injunction, the Court will nevertheless consider the remaining factors.

At the time Red Auto filed its motion for temporary restraining order, the Court acknowledged that irreparable harm would likely result in the absence of an order temporarily staying the Commissioner's enforcement action. *See* Dkt. #10. Yet at this stage of the proceedings, where the Court is considering whether to enter an order staying the Commissioner's enforcement action for the pendency of this action, it is necessary to address the fact that Red Auto waited until August 3, 2021—less than 48 hours before the Consent Decree was to become final—to file its complaint. It is well-established that a plaintiff's failure to timely seek a preliminary injunction weighs against a finding of irreparable harm. *Citizens of the Ebey's Rsrv. for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083 (W.D. Wash. 2015) (citing 11A Wright, Kane, Miller & Marcus, *Federal Practice and Procedure* § 2948.1 (2d ed.2011)). The Ninth Circuit has held that a "preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on rights[,] a plaintiff demonstrates the lack of need for speedy action." *Lydo Enters. v. City of Las Vegas,* 745 F.2d 1211, 1213 (9th Cir. 1984). In turn, a plaintiff's delay indicates a lack of irreparable harm. *Oakland Tribune, Inc. v. Chronicle Pub. Co.,* 762 F.2d 1374, 1377 (9th Cir. 1985).

Here, Red Auto claims that it attempted to correspond with the Commissioner regarding its jurisdictional arguments between June 16 and July 16, 2021. *See* Dkt. #16 at ¶ 3. This explanation does not remedy the fact that Red Auto was on notice of the OIC's Consent Order as early as May 7, 2021, yet waited nearly three months to seek judicial relief. By waiting until less than 48 hours from the date the Consent Order would become final and Red Auto would be subject to the harms it complains of herein, Red Auto's self-inflicted quandary weighs against a finding of irreparable harm.

### E. Balance of the Equities

At this stage in the proceedings, the balance of the equities also tips heavily in favor of the Commissioner. Whereas the Court previously found that the equities weighed in favor of Red Auto, given that Red Auto's risk of harm outweighed the Commissioner's brief delay in enforcement, any further delay in the Commissioner's enforcement efforts eviscerates the Commissioner's ability to protect important state interests in contravention of the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971).

The *Younger* abstention doctrine bars federal courts from granting relief when there is an ongoing administrative case involving important state interests. *Younger* provides that a federal court must abstain from hearing a federal case that could enjoin a state proceeding if (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so. *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004).

Here, Red Auto seeks an injunction preventing the Commissioner from taking enforcement action. This is precisely the type of federal interference contemplated and barred

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 13

by *Younger*. The Commissioner's proceeding implicates important state interests in protecting Washington residents from unregistered, out-of-state insurers who refuse to pay claims, and the federal court action would enjoin the Commissioner's enforcement of the Consent Order. Furthermore, Washington law provides that constitutional claims, including lack of jurisdiction, may be raised upon judicial review of an agency's final order. RCW § 34.05.570(3)(a)-(b) (providing that courts shall grant relief from an agency order if it determines that the order is in violation of constitutional provisions on its face or as applied, or that the order is outside the statutory authority or jurisdiction of the agency). Alternatively, Washington's Administrative Procedure Act ("APA") sets forth a process for a party to bypass an administrative hearing when the application of an agency rule impairs a party's legal rights. RCW § 34.05.570(2)(b).

  Red Auto's arguments to the contrary are unavailing. First, Red Auto contends that the state of Washington "does not have an important interest" in penalizing an out-of-state insurer. Yet as set forth in the Court's analysis of Red Auto's likelihood of success on the merits, it is well-established that states have a substantial interest in protecting their citizens through regulation of foreign insurers that enter into contracts with residents of that state. *See, e.g.*, *Howell*, 245 A.2nd at 324; *Ridemind, LLC v. S. China Ins. Co.*, No. C14-489RSL, 2014 WL 2573310, at *5 (W.D. Wash. June 9, 2014). Red Auto also denies that it can seek affirmative relief under the Washington APA "without severely undermining, if not waiving, its due process argument" based on case law addressing waiver of the defense for lack of personal jurisdiction. Dkt. #13 at 9 (citing *Chengdu Gaishi Elecs., Ltd. v. G.A.E.M.S., Inc.*, 11 Wash. App. 2d 617, 623, 454 P.3d 891, 894, *reconsideration denied* (Feb. 7, 2020)) (A party may waive a claim of lack of personal jurisdiction by requesting the court to grant affirmative relief."). Yet as Red Auto concedes in its briefing, its due process argument does not challenge

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO
PRELIMINARY INJUNCTION - 14

the judiciary's personal jurisdiction over it—rather, it concerns whether a state agency may enforce Washington laws against it. Red Auto provides no support for its proposition that by seeking relief in state court under the Washington APA, it must waive its due process argument against the Commissioner. Finally, Red Auto insists that if forced to exhaust its administrative remedies, it will suffer irreparable harm while awaiting the entry of an appealable order. The Court finds that Red Auto has failed to demonstrate how its alleged harm—including sanctions or disciplinary action from other state insurance commissions—could not be remedied through judicial relief.

For these reasons, given that a preliminary injunction would violate the *Younger* abstention doctrine, the balance of the equities weighs heavily in favor of the Commissioner.

**F. Public Interest**

At the time of entering the temporary restraining order, the Court observed that any risk posed to Washington residents by Red Auto's service contracts was "mitigated by the fact that Red Auto entered into runoff in 2019, meaning that it is no longer selling auto service contracts in any state." Dkt. #10 at 9. Yet as the Commissioner points out in its response, this dispute arose from a Washington resident paying for a service contract from an insurer who is not registered in Washington state, only for Red Auto to deny coverage and then void the service contract. Under these circumstances, the public interest lies in the Commissioner's ability to exercise its enforcement powers against unregistered out-of-state actors, like Red Auto, to protect Washington consumers. Red Auto does not meaningfully rebut the Commissioner's arguments in its reply. *See* Dkt. #13. For these reasons, the Court finds that the public interest weighs strongly against granting a preliminary injunction.

//

ORDER DENYING CONVERSION OF TEMPORARY RESTRAINING ORDER INTO PRELIMINARY INJUNCTION - 15

## IV.     CONCLUSION

Having reviewed the parties' briefing and supporting evidence, and having considered the entirety of the record, the Court hereby finds and ORDERS that this Court's Order Granting Motion for Temporary Restraining Order, Dkt. #10, SHALL NOT BE CONVERTED to a preliminary injunction.  The Order shall expire on August 18, 2021.

DATED this 17th day of August, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE